UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DC-3 ENTERTAINMENT, LLLP, a Florida
Limited Liability Limited Partnership,

   Plaintiff and Counterclaim Defendant,

   v.

JOHN GALT ENTERTAINMENT, INC., a
California corporation; DAVID
KERSHENBAUM and TIMMI DEROSA
KERSHENBAUM, husband and wife and the
marital community composed thereof,

   Defendants and Counterclaim Plaintiffs.

_____

JOHN GALT ENTERTAINMENT, INC., a
California corporation; DAVID
KERSHENBAUM and TIMMI DEROSA
KERSHENBAUM, husband and wife and the
marital community composed thereof,

   Third-Party Plaintiffs,

   v.

JONATHAN PHELPS and ESTHER PHELPS,
husband and wife and the marital community
composed thereof,

   Third-Party Defendants.

CASE NO. C04-2374C

ORDER

ORDER – 1

1    This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt.

2    No. 23).  The Court has considered the papers submitted by the parties and determined that oral

3    argument is not necessary.  The Court hereby finds and rules as follows.

4    **I. BACKGROUND**

5    The undisputed facts are as follows.  In May 2002, Defendants David and Timmi DeRosa

6    Kershenbaum, through their record publishing company John Galt Entertainment, Inc. ("John Galt"),

7    contracted with aspiring recording artist Brian Judah to develop his first seven records.  The written

8    production agreement provided that David Kershenbaum would produce the records.  On July 8, 2003,

9    John Galt assigned all of its rights in and to its May 2002 production agreement with Mr. Judah to DC-3

10   Entertainment ("DC-3").  Among other things, the assignment guaranteed that DC-3 would hire David

11   Kershenbaum as the sole producer of Mr. Judah's first album.  That same day, Mr. Judah signed a

12   recording contract with DC-3, through its CEO, Jonathan Phelps.  Production began on Mr. Judah's

13   debut album in September 2003.

14   In October 2003, the parties orally agreed that DC-3 would hire the Kershenbaums to develop

15   and produce other artists for DC-3, that they would be made co-presidents of DC-3, and that they would

16   receive a salary of $83,333.33 a month, on a month to month basis.  The parties never reduced this

17   agreement to writing, however, DC-3 did pay the Kershenbaums' salary until September 2004 when the

18   relationship ended.  Plaintiff DC-3 subsequently filed suit against Defendants alleging breach of contract

19   and related claims.  Defendants counterclaimed for breach of contract and discrimination on the basis of

20   religion and sex.

21   Plaintiff DC-3 now moves for partial summary judgment on its claim for a declaratory judgment.

22   Specifically, Plaintiff requests the Court issue a judgment stating that the sole producer guarantee in the

23   July 2003 Assignment was displaced by new obligations and consideration in the parties' October 2003

24   agreement, and that DC-3 has the right to re-record, complete and release the first Brian Judah album

25   without the producer services or any other participation of David Kershenbaum, and without a producer

26   ORDER – 2

1    credit to David Kershenbaum.

2    **II. ANALYSIS**

3       Courts have discretionary authority to grant declaratory relief under the Declaratory Judgment

4    Act. 28 U.S.C. § 2201(a). Actions for such relief must present a real and substantial controversy

5    between parties having adverse legal interests, and the dispute must be definite and concrete. *Babbitt v.*

6    *United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The "substantial controversy" must be of

7    sufficient immediacy and reality to warrant a declaratory judgment. *Md. Cas. Co. v. Pac. Coal & Oil*

8    *Co.*, 312 U.S. 270, 273 (1941). The parties do not dispute that the case at bar satisfies the "substantial

9    controversy" requirement and that the Declaratory Judgment Act applies. The Court is further satisfied

10   that Plaintiff is not simply seeking an advisory opinion as to the parties' legal rights and obligations. A

11   discussion of the merits is warranted.

12      Declaratory judgment actions may be addressed within the context of a summary judgment

13   motion. *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 670 (9th Cir. 2003). Rule 56 of the Federal

14   Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he

15   judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

16   admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact

17   and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In

18   determining whether an issue of fact exists, the court must view all evidence in the light most favorable to

19   the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty*

20   *Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A

21   genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find

22   for the non-moving party. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing

23   that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp.*

24   *v. Catrett*, 477 U.S. 317, 322 (1986).

25      Plaintiff argues that the Court should grant summary judgment on its motion for declaratory

26   ORDER – 3

judgment and find that DC-3 may complete Mr. Judah's first album without David Kershenbaum's

production services and without giving him producer credit.  Plaintiff's motion is loosely based on three

alternate arguments: (1) that David Kershenbaum's sole producer guarantee was extinguished; (2) that

the end of the parties' relationship terminated Plaintiff's obligation to use David Kershenbaum's producer

services; and (3) any obligation to use his producer services cannot be enforced by specific performance.

The Court will address each argument in turn.

A. Contract by Novation

Plaintiff first argues that the sole producer guarantee embodied in the July 2003 assignment was

extinguished by the parties' October 2003 oral agreement which was intended to represent a contract by

novation.  A contract by novation is "the substitution of a new obligation for an old one between the

same parties with intent to displace the old obligation with the new."  *MacPherson v. Franco*, 208 P.2d

641, 642 (Wash. 1949) (internal quotations omitted).  A novation exists upon (1) a mutual agreement, (2)

among all parties concerned, (3) for the discharge of a valid existing obligation, (4) by the substitution of

a new valid obligation or substitution of one party for another.  *Fay Corp. v. Bat Holdings I, Inc.*, 646 F.

Supp. 946, 950 (W.D. Wash. 1986).

Viewing the facts in the light most favorable to the non-moving party, the Court must conclude

that the terms and scope of the October 2003 agreement are in dispute.  The parties agree that they

entered into an oral agreement in October 2003.  (Am. Compl. ¶ 17, Answer ¶ 17.)  They also agree that

DC-3 made monthly payments of $83,333.33 to the Kershenbaums that, in sum, totaled $1 million.  (Am.

Compl. ¶ 24, Answer ¶ 24.)  What the parties do not agree on is whether the oral agreement discharged

their valid existing obligations under the July 2003 assignment.  For example, Jonathan Phelps declares

"[f]ollowing our new agreement with the Kershenbaums in October 2003, David Kershenbaum continued

to work on Brian Judah's album but there was no agreement under this October 2003 contract that DC-3

would guarantee that David would produce Brian's first album."  (Phelps Decl. ¶ 21.)  David

Kershenbaum, however, declares "the co-presidency had no bearing on my commitment to produce the

ORDER – 4

1   Judah album as set forth in the July 2003 assignment" (Kershenbaum Decl. ¶ 13) and "[a]s a result of the

2   October 2003 meeting, two agreements now existed" (*Id*. ¶ 14).   At this stage in the litigation the Court

3   must assume that David Kershenbaum's declaration is truthful.   *See Eisenberg v. Ins. Co. of N. Am.*, 815

4   F.2d 1285, 1289 (9th Cir. 1987).   These declarations, therefore, strike at the heart of the mutuality

5   necessary for a contract by novation.   Although Plaintiff's failure to pay the Kershenbaums $50,000 for

6   mixing as required by the July 2003 assignment, combined with the payment of a month to month salary

7   pursuant to the October 2003 agreement make it possible to infer that the oral agreement supercedes the

8   assignment, such an inference, without more, does not convince the Court that the parties mutually

9   agreed to the substitution of a new obligation.

10      Moreover, the existence of other disputed terms arising from the October 2003 oral agreement

11   (*cf*. Phelps Decl. ¶ 17 *with* Kershenbaum Decl. ¶ 11), while not fatal, certainly does not bolster Plaintiff's

12   argument that the contract term at issue here - that David Kershenbaum was to act as sole producer -

13   was, as a matter of law, extinguished by the new compensation arrangements in the October 2003 oral

14   agreement.   Particularly since David Kershenbaum did in fact continue to act as the sole producer of

15   Brian Judah's debut album for another year.   *See also Malanca v. Falstaff Brewing Co.*, 694 F.2d 182,

16   184 (9th Cir. 1982) (indicating that interpretation of an oral contract may rest on credibility judgments by

17   the trier of fact).   Thus, the Court finds that a genuine issue of material fact exists regarding the

18   characterization of the October 2003 oral agreement.   Summary judgment is not appropriate.

19      B.  Termination of Relationship

20      Plaintiff next argues that the end of the parties' relationship terminated any obligation to use

21   David Kershenbaum's producer services.   This argument appears to be based on a theory of contract

22   rescission, and proposes that by allowing for the termination of the October 2003 agreement for any

23   reason and by providing for a "severance package" for the Kershenbaums upon termination, the parties

24   implicitly agreed that if the relationship ended, both the October 2003 agreement and the July 2003

25   assignment would be terminated.   Because there is an issue of fact as to the intent of the parties in

26   ORDER – 5

1    reaching the October 2003 oral agreement, and as to whether one or both agreements govern the parties'

2    relationship, the Court finds it is not able to address this argument.  Whether Plaintiff has been freed from

3    any legal obligation to abide by the sole producer guarantee is an issue of fact for trial.

4          C.  Specific Performance

5          Finally, Plaintiff argues that even if the sole producer guarantee of the July 2003 assignment

6    survived, Defendants cannot enforce such a guarantee by specific performance.  In denying summary

7    judgment, the Court makes no determination regarding Mr. Kershenbaum's legal right to produce Mr.

8    Judah's first album.  However, even if the Court ultimately finds Mr. Kershenbaum has this production

9    right, specific performance will not be an available remedy.  *See Rutland Marble Co. v. Ripley*, 77 U.S.

10   339, 358 (1870) (finding specific performance of a contract will not be decreed where the duties to be

11   performed are continuous, involve the exercise of skill, personal labor and cultivated judgment); *Solinsky*

12   *v. McPherson*, 45 F.2d 778, 780 (9th Cir. 1930) (holding specific performance is inapplicable to disputes

13   over personal service contracts); Restatement (First) of Contracts § 379 (1932) (noting "the

14   undesirability of compelling the continuance of personal association after disputes have arisen and

15   confidence and loyalty are gone.").  Although Defendants make a passing reference to Plaintiff's specific

16   performance argument by suggesting that the proper remedy here would be to enjoin Plaintiff from

17   proceeding with the production of Mr. Judah's debut album without David Kershenbaum's producer

18   services, this mere assertion does nothing to address the merits of Plaintiff's argument.  The Court

19   cannot, as a matter of law, order feuding parties to work together to produce an album.

20         For the aforementioned reasons, Plaintiff's Motion for Partial Summary Judgment is hereby

21   GRANTED in the part and DENIED in part.

22         SO ORDERED this   20th   day of May, 2005.

23

24                                          UNITED STATES DISTRICT JUDGE

25

26   ORDER – 6