UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DC3 ENTERTAINMENT, LLC, a Washington limited liability company,

    Plaintiff and Counterclaim Defendant,

    v.

JOHN GALT ENTERTAINMENT, INC., a California corporation; DAVID KERSHENBAUM and TIMMI DEROSA KERSHENBAUM, husband and wife and the marital community composed thereof,

    Defendants and Counterclaim Plaintiffs.
_____

JOHN GALT ENTERTAINMENT, INC., a California corporation; DAVID KERSHENBAUM and TIMMI DEROSA KERSHENBAUM, husband and wife and the marital community composed thereof,

    Third-Party Plaintiffs,

    v.

JONATHAN PHELPS and ESTHER PHELPS, husband and wife and the marital community composed thereof,

    Third-Party Defendants.

CASE NO. C04-2374C

ORDER

ORDER – 1

1    This matter comes before the Court on Defendants' Motion to Compel Production of Documents
2    (Dkt. No. 96) ("Defs.' Mot."), Plaintiff's and Third-Party Defendants' Opposition (Dkt. No. 109) ("Pl.'s
3    Opp'n"), and Defendants' Reply in support of their motion (Dkt. No. 121) ("Defs.' Reply").  The Court
4    has considered the papers submitted regarding this motion and determined that oral argument is not
5    necessary.  The Court hereby GRANTS the motion and rules as follows.

**I. BACKGROUND**

The underlying dispute concerns a series of agreements related to the development of a debut album by recording artist Brian Judah, as well as the business relationship between the parties.  Plaintiff's First Amended and Supplemental Complaint (Dkt. No. 14) alleged claims for declaratory judgment, breach of contract, breach of a covenant of good faith and fair dealing, breach of fiduciary duty, and injunctive relief in connection with Plaintiff's relationship with Defendants, particularly David Kershenbaum and Timmi DeRosa Kershenbaum.  Defendants counterclaimed for breach of contract, an accounting of royalties, establishment of a constructive trust, discrimination, harassment, retaliation, and wrongful termination; they also claimed against Third-Party Defendants for an accounting of royalties, establishment of a constructive trust, harassment, and retaliation.  (Dkt. No. 18.)

Specifically relevant to the instant motion is Defendants' first set of Requests for Production of Documents, propounded to Plaintiff and Third-Party Defendants on April 15, 2005.  Responses to these requests were served on May 18, 2005.  The instant motion seeks production of documents and things set forth in Requests 4 and 9.

The parties have satisfied the meet-and-confer requirement of Federal Rule of Civil Procedure 37(a)(2) through their correspondence documented in their papers on this motion (*see, e.g.,* Defs.' Mot. 6–7) and according to Defendants' certification in support of their motion (Dkt. No. 98).

//
//
//

ORDER – 2

## II. ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1).  In order to reduce the element of surprise and facilitate settlement, courts liberally construe pretrial discovery.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).  Thus, the information Defendants seek must be relevant and non-privileged if that information is to be discoverable.

### A. Request No. 4

Request No. 4 seeks production of the "'black books' or diaries containing the daily or periodic handwritten entries or notes of [Third-Party Defendant] Jon Phelps for the period January 1, 2003 to the present."  (Defs.' Mot., Stone Decl. Ex.1.)  Plaintiff's and Third-Party Defendants' Response to this Request for Production was as follows:

> Plaintiff and the Phelpses object to Request for Production No. 4 on the grounds that it seeks irrelevant information, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome, in so far as it seeks all diaries from January 1, 2003 to the present regardless of relevance and despite the fact that the parties did not meet until June 2003.  Plaintiff and the Phelpses further object to the request on the grounds that it is highly invasive of privacy rights and is intended to harass Jonathan Phelps.  Without waiving the foregoing objections, Plaintiff and the Phelpses will produce non-privileged, redacted copies of the diaries during the relevant time period upon entry of a stipulated protective order.

(*Id.*)  Following the request and response, 1189 pages[1] of the journal were produced in a series of separate productions.  According to Defendants, almost three-fourths of the information in the journals has been redacted.  (Defs.' Mot. 4.)  No redacted information has been produced since.  (*Id.* at 6.)

---

[1] This is the figure Defendants give.  Plaintiff and Third-Party Defendants say they have produced 1091 photocopies.  (Pl.'s Opp'n 4.)  According to Plaintiff and Third-Party Defendants, these copies came from 20 different books.  (*Id.*)

ORDER – 3

1  //

26  ORDER – 4

1    Defendants argue in their motion that the requested information must be produced because it is
2  critical to their case. In particular, the books contain the personal writing of Third-Party Defendant Jon
3  Phelps ("Mr. Phelps") relevant to the operation of Plaintiff DC-3. According to Defendant Timmi
4  DeRosa Kershenbaum, Mr. Phelps read from the books to employees on a regular basis. (Defs.' Mot.,
5  Kershenbaum Decl.) Some of these readings allegedly contained significant statements about her (as well
6  as about Defendant David Kershenbaum). (*Id.*)

7    As to relevance and privacy, Plaintiff and Third-Party Defendants claimed in a letter on August
8  25, 2005 that they had decided to produce the requested documents in part, rather than withhold them
9  altogether, and claimed to have redacted "personal and irrelevant" information. (Pl.'s Opp'n, Lay Decl.
10 Ex. 9.) Further, Plaintiff and Third-Party Defendants argue in their opposition that, rather than the
11 content Defendants allege, the redacted portions of the books merely contain information about "Mr.
12 Phelps's other business, his family, his spirituality, his songwriting and other creative activities, and any of
13 a number of other things that have nothing to do with DC3 and/or Defendants David or Timmi
14 Kershenbaum." (Pl.'s Opp'n 6.) Plaintiff and Third-Party Defendants maintain that they should be
15 required to produce no more, and, in the alternative, they request an *in camera* review by this Court
16 before any further portions of the books are ordered produced.

17   Defendants contend that, rather than protecting privacy, the redactions may improperly conceal
18 material evidence. As support for this theory, Defendants cite: (1) Defendant Timmi Kershenbaum's
19 memory of Third-Party Defendant Jon Phelps reading from the books about his belief that she "had either
20 one demon or a legion of demons and that God had called upon Phelps to help Timmi"; (2) very few
21 entries in the 2- to 3-month period leading up to the end of Defendants' employment with Plaintiff and
22 Third-Party Defendants; (3) the lack of references to Defendants' work that Defendant Timmi
23 Kershenbaum remembers having heard read aloud; and (4) that, where the books did discuss Defendants,
24 there was the appearance that thoughts about Defendants continuing onto additional pages were redacted
25 in some places. (Defs.' Mot. at 5–6).

26 ORDER – 5

1    Defendants have not provided further evidence or examples of the above. However, as Plaintiff
2    and Third-Party Defendants admit, production of the books in full would be the "only possible support
3    for Defendants' assertion regarding the frequency of their mention in the books." (Pl.'s Opp'n 5–6.)
4    Because Defendants have *not* received production of the books in full, they should not be prejudiced for
5    not having the best possible evidence—or indeed the "only possible" evidence to support their motion.
6    The Court finds Plaintiff's and Third-Party Defendants' privacy and relevance objections
7    unconvincing. First, Mr. Phelps himself states the following: "I do not consider my books to be diaries or
8    calendars, nor do I consider them to be records of my life in which I record actions or conversations on a
9    daily basis. I simply use the books to periodically jot down my thoughts or information that I may want
10   to refer to at a later date." (Pl.'s Opp'n, Phelps Decl. 2.) Further, Mr. Phelps stated that the books
11   represent "to do" lists and notes that "likely would make little sense to anyone but myself." (*Id*. at 2–3.)
12   Yet the opposition to this motion argues that the redacted portions of the books contain personal
13   thoughts akin to the contents of a diary. Mr. Phelps's contradictory statements about the content (the
14   books are not "diaries," yet they are "personal" and referred to as "journals" in his Declaration) are
15   unpersuasive when considered as a whole. These statements signal to the Court that Mr. Phelps may
16   want to have it both ways—such that the books would be too personal to be discoverable, yet not
17   sufficiently demonstrative of his personal thoughts to be relevant to this lawsuit, which involves
18   significant contract, employment, and discrimination claims stemming from the parties' business
19   relationship—claims wherein Mr. Phelps's state of mind *is* relevant.
20   Furthermore, regardless of their personal content, the books clearly *are* business related. Indeed,
21   the portions of the books provided to the Court (*Id*. Ex. 1–2) largely relate to business matters. Thus,
22   aside from the unconvincing claims that the books are merely a collection of irrelevant personal thoughts,
23   the Court has no reason to think that the rest of the books are of an entirely different character than the
24   portions produced to Defendants and attached to the opposition to this motion. Because of this
25   appearance and the alleged readings from the books that occurred in the presence of employees (which,
26   ORDER – 6

notably, goes unrefuted in Mr. Phelps's Declaration), the books do appear to be relevant to this suit. Mr. Phelps's *business* is the Plaintiff in this case. By bringing suit and by allegedly reading aloud from his books at work, Mr. Phelps has put the content of his books in issue and waived any privacy claim he may have. Thus, the Court is inclined to deem the books discoverable, because they appear to be highly relevant to the case.

A few other objections were made in addition to those discussed *supra*. In the original response to Request No. 4, Plaintiff and Third-Party Defendants claimed that the request was broad and unduly burdensome. However, based on the foregoing relevance analysis and the labor-intensive redaction process that has already been completed, this objection is without merit. It is far less burdensome to produce the books in their entirety than to produce redacted portions.

Finally, Plaintiff and Third-Party Defendants find fault with Defendants' method of calculating how much was redacted (73.25%) and claim that the Defendants are merely inventing content that they think should be in the books at certain times. In sum, throughout their opposition Plaintiff and Third-Party Defendants repeat in various forms the alleged evidentiary deficiencies of Defendants' motion and claim that the redacted portions cannot possibly be relevant. While the Court may have benefitted from presentation of more concrete evidence (the lack of which is almost entirely out of Defendants' control), Defendants still have made a case that the requested information is relevant. Further, just because the information on redacted pages may not be *about* Defendants by name or *about* DC-3 does not mean that the pages are irrelevant. The critical finding by this Court is that the information in the books may *lead* Defendants to the discovery of admissible evidence. *See* FED. R. CIV. P. 26(b)(1). There is no test that mandates that each page must bear their names before it is capable of being relevant to their defense and/or prosecution of their counterclaims and third-party claims. Defendants have shown that the information is relevant. The Court finds that an *in camera* review is not necessary.

//

//

ORDER – 7

1    Having determined that the books are relevant and that any privacy claims have been waived, the
2    only remaining argument that could prevent the books from being discoverable is that regarding privilege.
3    Defendants argue that the books were not written in anticipation of litigation or for attorneys, and thus
4    are not entitled to attorney–client privileged status. Because the documents are relevant and non-
5    privileged, Defendants argue, they must be produced.

6    As to attorney–client privilege, several events relate to the instant motion. Third-Party Defendant
7    Jon Phelps first met with his attorneys at Hendricks & Lewis on October 27, 2004 to discuss the instant
8    case. (Pl.'s Opp'n, Furman Decl. 3.) Most of the pages in the books from October 2004 were withheld
9    as privileged. (Pl.'s Opp'n, Lewis Decl. Ex. 2; Furman Decl. 3). A small part of the information
10   produced arguably was created during the attorney–client privileged period that began sometime in
11   October 2004 but was produced anyway, subject to Defendants' agreement that they would not argue
12   that the privilege was waived by that limited production. (Pl.'s Opp'n, Lay Decl. Ex. 9; Lewis Decl. Exs.
13   1 & 2.) In any event, all information in the books from October 27, 2004 forward was withheld as
14   privileged. (Pl.'s Opp'n, Furman Decl. 3–4.) The Court finds that no books created prior to October
15   2004 carry an attorney–client privileged status. However, the books created from October 27, 2004
16   forward likely are privileged. Thus, all redactions of material created before October 2004 have no
17   privilege protection, and those books must be produced *in full*. Material created during October 2004
18   appears to have been redacted in a manner consistent with attorney–client privilege attachment, so
19   redactions of material from October 2004 forward may remain in place.

20   Having determined that all books from January 1, 2003 through September 30, 2004 are
21   discoverable in full, the only remaining issue is the level of confidentiality that should attach to those
22   books during this litigation. In response to the privacy concerns raised by Mr. Phelps, Defendants assert
23   that any private information in need of protection *already* is adequately protected by the June 27, 2005
24   Stipulated Protective Order Regarding Confidential Information (Dkt. No. 80) signed by this Court and
25   by necessary redactions to protect financial account numbers, social security numbers, the names of
26   ORDER – 8

minors, and birth dates. The Court agrees. Any pages produced pursuant to this Order shall be designated "Confidential" and shall not be used for purposes other than this litigation, in accordance with all of the terms of the Protective Order.

**B. Request No. 9**

Request No. 9 seeks production of "CD copies of all masters, mixes, rough mixes, and works in progress for all songs for the Brian Judah album produced without David Kershenbaum." (Defs.' Mot., Stone Decl. Ex.1.) Plaintiff's and Third-Party Defendants' Response to this Request for Production was as follows:

> Plaintiff and the Phelpses object to Request for Production No. 9 on the grounds that it is overly broad and unduly burdensome. Without waiving the foregoing objections, Plaintiff and the Phelpses will make CDs available for copying, at Defendants' sole expense, upon entry of a stipulated protective order.

(*Id.*) No CDs were produced in response. In fact, Plaintiff and Third-Party Defendants assert that their "response was in error" in their opposition to this motion. (Pl.'s Opp'n 3.) Defendants point out that this is the first they have heard of this "error." (Defs.' Reply 2.)

Defendants argue that they need the material to defend against the claims against them, which allege that Defendant David Kershenbaum's work was substandard and grounds for breach. Defendants claim the information is also necessary to compare David Kershenbaum's work to the new work. (Defs.' Mot. 3–4.) Plaintiff and Third-Party Defendants oppose the request in part because the material is "not mixed" (but will be by mid-December 2005) and in part because the unreleased recordings are "extraordinarily confidential." Further, they not-so-subtly suggest throughout their papers on the motion that if the recordings at issue were produced, Defendants would "accidentally" release the material in spite of the Protective Order in place in this litigation. (Pl.'s Opp'n 3, 9–11.) As an alternative to completely protecting the material from Defendants' ears, Plaintiff and Third-Party Defendants suggest a scheme for review of the material in their own studio.

The Court finds that Defendants have shown that the information sought by Request No. 9 is relevant to their defense and must be produced. Even though the recordings are not yet "mixed," Plaintiff

ORDER – 9

and Third-Party Defendants suggest—by their very proposal to allow Defendants to listen to the recordings in Plaintiff's and Third-Party Defendants' studio—that *all* the requested recordings can be listened to currently, regardless of their "mix" status and regardless of whether they are "finished" or not. The parties discussed a replication process in their numerous meet-and-confer letters, wherein it appears that CDs can be burned in short order and copies of the material produced. The Court finds that requiring Defendants to go to Plaintiff's and Third-Party Defendants' studio is unduly burdensome and unnecessary. Therefore, copies shall be made for Defendants' examination in the studio of their choice and on their own timeline. The Protective Order already in place will protect the copied material from being released to outsiders. Therefore, all copies of the recordings at issue in Request No. 9 shall be produced to Defendants and marked as "Confidential." Defendants may not share the recordings with anyone for purposes other than this litigation, and must follow all the terms of the Protective Order. Further, Plaintiff and Third-Party Defendants must supplement their production of CDs with all subsequently "mixed" and/or "finished" versions of the material at issue in Request No. 9. They may not wait until the recordings are officially "released" to the public before producing them to Defendants. //
//
//
//
//
//
//
//
//
//

ORDER – 10

### III. CONCLUSION

For the reasons set forth in this Order, Defendants' Motion to Compel Production of Documents is hereby GRANTED as follows:

(1) Copies of Third-Party Defendant Jon Phelps's "black books" must be produced in full for the period from January 1, 2003 through September 20, 2004 within ten (10) days of the date of this Order. Copies of all pages, even if blank, shall be produced as a complete set. The set of pages produced shall be designated "Confidential." No redactions by Plaintiff and Third-Party Defendants are permissible, unless they are of financial account numbers, social security numbers, the names of minors, or birth dates.

(2) Plaintiff and Third-Party Defendants shall produce copies of all masters, mixes, rough mixes, and works in progress for all songs for the Brian Judah album produced without David Kershenbaum within ten (10) days of the date of this Order. The copies shall be designated "Confidential."

SO ORDERED this 6th day of December, 2005.

*/s/ John C. Coughenour*

John C. Coughenour
United States District Judge

ORDER – 11